IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GORDON FRANK,                                    07-CV-811-BR

       Plaintiff,                            OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


TIM D. WILBORN
Wilborn Law Office, P.C.
19093 S. Beavercreek Road
PMB #314
Oregon City, OR 97045
(503) 632-1120


       Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1158

1   -   OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**JOANNE ELIZABETH DANTONIO**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2730

          Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Gordon Frank seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he denied Frank's application for

Disability Insurance Benefits (DIB) and found Frank ineligible

for Supplemental Security Income (SSI) payments under Titles II

and XVI of the Social Security Act.  This Court has jurisdiction

to review the Commissioner's decision pursuant to 42 U.S.C.

§ 405(g).

     Following a review of the record, the Court **REVERSES** the

decision of the Commissioner and **REMANDS** this matter pursuant to

sentence four of 42 U.S.C. § 405(g) for the calculation and award

of benefits.


## ADMINISTRATIVE HISTORY

     Frank filed applications for SSI and DIB on June 21, 2004.

Tr. 75-85.[1]  The applications were denied initially and on
reconsideration.  Tr. 35-37, 39-43.  On July 26, 2006, an
Administrative Law Judge (ALJ) held a hearing at which Frank
was represented by an attorney.  Tr. 398-433.  Frank and a
vocational expert (VE) testified at the hearing.  Tr. 398-433.
On September 27, 2006, the ALJ found Frank is not disabled and,
therefore, is not entitled to benefits.  Tr. 15-25.  The Appeals
Council denied Frank's request for review.  Tr. 7-9.  Thus, the
ALJ's decision became the final decision of the Commissioner on
April 6, 2007.

## BACKGROUND

     Frank was 48 years old at the time of the second hearing
before the ALJ.  Tr. 82.  Frank completed the 11th grade in high
school but did not graduate.[2]  Tr. 23, 401.  He has worked as an
aircraft-component assembler and inspector, a heavy-equipment
operator, a gas-station attendant and manager, a logger, a
mechanic, and a restaurant manager.  Tr. 76-77, 98-101, 420-21.

     On September 8, 2000, Frank herniated a disc in his cervical
spine when an airplane fuselage a few feet above him fell onto

---

     [1] Citations to the official transcript of record filed by
the Commissioner on February 21, 2007, are referred to as "Tr."

     [2] Although the record reflects Frank indicated he completed
12th grade, he testified at the hearing that he had only
completed 11th grade.  Tr. 81, 401.

his right shoulder and neck.  Tr. 164, 238, 272.  In February

2001, Frank had an anterior cervical discectomy, cervical

plating, and a fusion at C3-4 to repair the damage to his

cervical spine.  Tr. 155-56.  Despite experiencing some relief

from the pain in his neck, Frank has since suffered from chronic

back pain, particularly in the area of his right scapula.

Tr. 95, 165, 183-88, 238, 410-13.  In July 2002 Frank was laid

off from his employment in quality assurance with Lancair

Company.  Tr. 98, 403-05.  Frank alleges a disability onset date

of July 13, 2002.  Tr. 401.

Frank has been diagnosed with degenerative disc disease of

the cervical spine.  Tr. 173, 183, 186-88.  Frank has also been

diagnosed with myofascial pain syndrome, which results in chronic

pain in his neck, shoulder, and back.  Tr. 179-81, 183, 186-87,

190-96, 324, 366-68.  In addition, Frank has been diagnosed with

depression.  Tr. 173, 245, 324, 367-70.


## **STANDARDS**

The initial burden of proof rests on the claimant to

establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004

(9th Cir. 2005).  To meet this burden, a claimant must demon-

strate his inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or

mental impairment which . . . has lasted or can be expected to

4   -   OPINION AND ORDER

last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Robbins,*
466 F.3d at 882.  The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.
2005).  The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.

2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is
potentially dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of a
number of listed impairments that the Commissioner acknowledges
are so severe as to preclude substantial gainful activity.
*Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Frank has not engaged in substantial gainful activity since his alleged onset date of July 13, 2002.  Tr. 17.

At Step Two, the ALJ found Frank's cervical degenerative disc disease, myofascial pain disorder, and adjustment disorder with depression were severe impairments.  Tr. 18.

At Step Three, the ALJ found Frank's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ then assessed Frank's RFC and found he is able to lift and to carry up to five pounds

8   -   OPINION AND ORDER

with his right hand and 20 pounds with his left hand; to stand two to four hours in an eight-hour workday in one-hour increments; to walk two hours in an eight-hour workday in 30-minute increments; to sit for four hours in an eight-hour workday in two-hour increments; to push, pull, or reach overhead with his right extremity occasionally; and to balance, kneel, stoop, crouch, and crawl occasionally. Tr. 18. The ALJ found Frank cannot climb ladders or scaffolds and should avoid operation of dangerous machinery and exposure to excessive cold, wetness, and humidity. Tr. 18. He found Frank is unable to follow detailed instructions. Tr. 18.

At Step Four, based on Frank's RFC and the testimony of the VE, the ALJ found Frank cannot return to his past relevant work as an aircraft-production inspector, logger, mechanic, gas-station manager, or restaurant manager. Tr. 23.

At Step Five, the ALJ found Frank could perform jobs that exist in significant numbers in the national economy such as account clerk, call-out operator, and surveillance-systems monitor. Tr. 23-24. Accordingly, the ALJ found Frank is not disabled and, therefore, is not entitled to benefits. Tr. 24-25.

## DISCUSSION

Frank contends the ALJ erred by finding Frank's statements and testimony "concerning the intensity, persistence and limiting

effects" of his symptoms "not entirely credible."  Frank also contends the ALJ erred by failing to properly consider the medical opinions of John W. Swanson, M.D.; Geoffrey Bartol, Ph.D.; Nancy Maloney, M.D.; and Delmar Greenleaf, M.D.  Frank also asserts the ALJ improperly relied on the VE's flawed testimony as to the jobs that Frank is capable of performing.

## I.   Claimant Credibility.

Frank asserts the ALJ erred when he found Frank's testimony "concerning the intensity, persistence and limiting effects" of his symptoms was "not entirely credible."  Tr. 19.

The test for rejecting a claimant's subjective symptom testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The *Cotton* test establishes two basic requirements for a claimant to present credible symptom testimony:  He must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407.  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and

convincing reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  *See also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).  General assertions that the claimant's testimony is not credible are insufficient.  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

On the basis of his review of the medical evidence, the ALJ found Frank's "medically determinable impairments could reasonably be expected to produce some of [his] alleged symptoms." Tr. 19.  The ALJ did not offer affirmative evidence that Frank is malingering.  Thus, Frank satisfied the *Cotton* test, and the ALJ must provide clear and convincing reasons supported by substantial evidence in the record to reject Frank's testimony regarding the severity of his symptoms.  *See Cotton*, 799 F.2d at 1407.  *See also Smolen*, 80 F.3d at 1284.

### A.   Frank's Testimony.

Frank testified he suffers from severe chronic pain in his neck and back from a "trigger point" that feels like "a hot burning spike" located near his right shoulder blade, which limits the use of his right arm.  Tr. 410-11.  Frank attested even minimal physical activity such as twisting, reaching, or walking can aggravate his back pain, which at times is so severe that he must lie down for extended periods.  Tr. 411.  Frank also testified he has trouble sleeping because of the pain he suffers.

Tr. 411.  He stated his lack of sleep in combination with the
medications he takes for pain results in difficulties with
concentration and the completion of even simple tasks.  Tr. 411-
12.  Frank attested on some days he is able to perform limited
household activities, but he indicated his pain is aggravated by
sustained activity, and, therefore, he cannot maintain a full-
time employment schedule.  Tr. 415.  Frank described his
limitations similarly in written pain questionnaires.  Tr. 95-97.

Frank testified his employer, Lancair, accommodated his
impairments on his return to work after the surgery to repair his
cervical spine.  Lancair placed him in a quality-assurance
position that required little physical effort, provided him
assistance with moving or lifting, and allowed him to lie down
"for an hour or so" when the pain in his back made it difficult
for him to continue working.  Tr. 403-05.  Frank also attested
his employer would "bring [him] in the office and find something
for [him] to do" when he was hurting too much to perform his job.
Tr. 405.

**B.   The ALJ's Decision.**

The ALJ found Frank's testimony regarding the severity of
his symptoms not credible on five grounds:  Frank gave
inconsistent testimony regarding how much weight he could lift;
Frank's unemployment was the result of economic rather than
medical factors; Frank applied for and received unemployment

benefits; Frank's daily activities belied his statements regarding the severity of his impairments; and Frank exaggerated his symptoms.  Tr. 19-22.

As noted, the ALJ found Frank's statement in his initial self-assessment that he could lift 20 pounds "contradicts some of his other statements in the record."  Tr. 22.  In light of the ALJ's conclusion that Frank could only lift five pounds with his right arm, it is not clear how Frank's statement regarding his ability to lift more than five pounds conflicts with his accounts of the severity of his impairments.  In any event, the ALJ does not point to any contradictory statements in the record to support his conclusion that Frank made inconsistent statements that undermine his testimony as to the severity of his impairments.  As noted, the ALJ must specifically identify evidence in the record to support his conclusion that Frank's testimony is not credible.  *See Lester*, 81 F.3d at 834.  Because the ALJ did not do so, the Court finds the ALJ's assertion that Frank made inconsistent statements regarding his ability to lift certain weights is not a clear and convincing reason for rejecting Frank's subjective symptom testimony.

The ALJ also discredited Frank's testimony on the ground that Frank's unemployment was the result of economic factors (*i.e.*, a lay-off that was motivated by business factors) rather than the result of Frank's physical impairments.  Tr. 21-22.  The

13  -  OPINION AND ORDER

ALJ found Frank was not as limited by his impairments as he reported as demonstrated by the fact that he was willing to return to the quality-assurance position that Lancair provided him after his accident.  Tr. 22.  In other words, the ALJ pointed out that Frank could perform light-duty work.  The ALJ, however, did not address Frank's testimony regarding the accommodations that Lancair provided, which enabled Frank to perform light-duty work.  Tr. 403-05.  In any event, a claimant's willingness to work or sporadic ability to do some work despite his impairments is not a sufficient reason for discrediting a claimant's testimony regarding his symptoms.  *Id.* at 833.

The ALJ also discredited Frank's testimony on the basis that he applied for and received unemployment benefits after his lay-off from Lancair.  Tr. 22.  Without providing any legal authority, the ALJ asserted unemployment "applicants must typically affirm that they are capable of working" and that such an affirmation would be inconsistent with Frank's testimony that he is not capable of working.  Tr. 22.  The record, however, does not reflect Frank actually made any such affirmation in his application for unemployment benefits, and the ALJ only asked Frank at the hearing whether he received unemployment benefits.  Tr. 406.  In any event, Social Security regulations require a claimant to "apply for all other benefits for which you *may* be eligible," which includes unemployment insurance benefits.  20

14  -  OPINION AND ORDER

C.F.R. § 416.210 (emphasis added).

To be eligible for Social Security benefits, a claimant must be unable to work on a "regular and continuing" basis, which means he cannot work eight hours a day for five days a week. SSR 96-8p at *1.  Under Oregon law, a disabled claimant may be able to receive unemployment benefits even if he is able to perform "some work."  Or. Admin. R. 471-030-0036(2)(2008). Thus, a claimant may be eligible for both Social Security benefits and Oregon unemployment insurance if his impairment allows him to do "some work" even if it is not on a "regular and continuing" basis within the meaning of the Social Security regulations.  The Court, therefore, finds there is not an inherent contradiction between Frank's concurrent application for and receipt of Oregon unemployment insurance and application for Social Security benefits.

The ALJ also discredited Frank's testimony regarding the severity of his symptoms on the ground that he is able to drive an automobile, to care for his six-year-old son, and to perform household chores.  Tr. 22.  Frank, however, testified these daily activities caused him pain and that he required assistance with such activities at times because of the severity of the pain. Tr. 114-16, 402, 413.  In any event, the Ninth Circuit has held evidence that a claimant performs some daily activities is not a sufficient basis to discredit a claimant's subjective symptom

testimony:

> This court has repeatedly asserted that the
> mere fact that a plaintiff has carried on
> certain daily activities, such as grocery
> shopping, driving a car, or limited walking
> for exercise, does not in any way detract
> from her credibility as to her overall
> disability.  One does not need to be utterly
> incapacitated in order to be disabled.  In
> addition [such] activities . . . are not
> necessarily transferable to the work setting
> with regard to the impact of pain.  A patient
> may do these activities *despite* pain for
> therapeutic reasons, but that does not mean
> he could concentrate on work despite the pain
> or could engage in similar activity for a
> longer period given the pain involved.

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)(internal

quotations omitted).  Moreover, the fact that a claimant

experiences occasional periods when his symptoms subside is

not inconsistent with a finding of disability.  20 C.F.R.

§ 404.1512(a).

Finally, the ALJ discredited Frank's testimony on the basis

that Frank exhibited "a degree of exaggeration" of his symptoms.

Tr. 20.  The ALJ points to the opinion of Dr. Greenleaf on

October 1, 2004, in which he indicated Frank tested positive on

three out of five Waddell signs[3] and that "over-dramatization may

---

[3] Waddell tests are designed to assess the physical or
nonorganic etiology of low-back pain.  Plaintiff urges this Court
to review medical literature not included in the record to assess
whether Dr. Greenleaf improperly performed Waddell tests or
whether the ALJ improperly interpreted the results of such tests.
This Court, however, declines to review information that was not
before the ALJ.

actually be positive." Tr. 241. Dr. Greenleaf made this assessment based on the fact that Frank's trigger-point pain was localized and did not radiate. Tr. 241. Dr. Greenleaf, however, concluded Frank's "tenderness certainly has been very consistently in the same spot over the last four years, since the accident. This lends one to feel that this is indeed myofascial pain syndrome, with trigger point pain." Tr. 241. Dr. Greenleaf also indicated Frank's trigger-point pain is confirmed by objective findings and suggested Frank see a psychologist to determine whether Frank's subjective complaints might have a psychological component. Tr. 241-42. Thus, despite Frank's positive Waddell signs, Dr. Greenleaf did not conclude Frank was malingering.

After performing a comprehensive psychological evaluation of Frank over two days in February 2006, Dr. Bartol concluded Frank was not malingering and diagnosed him with a pain disorder consisting of both medical and psychological factors. Tr. 362, 367-68. In addition, the record is replete with diagnoses by Frank's physicians of his trigger-point pain and myofascial pain syndrome. Tr. 180-86, 190-92, 197, 249, 256-57, 266, 367-70. For example, Frank's treating physician, Robert E. Andrews, M.D., who treated Frank over the course of five years and examined him dozens of times, concluded on multiple occasions that Frank's pain symptoms were objectively verifiable and that Frank was not

malingering or motivated by secondary gain.  Tr. 186-88, 193, 324.

The Court, therefore, concludes the ALJ erred when he found Frank exaggerated his symptoms because the ALJ did not provide clear and convincing reasons supported by substantial evidence in the record for rejecting Frank's subjective pain testimony.

## II.  Medical Opinions.

Frank contends the ALJ erred because he did not properly consider the medical opinions of Drs. Swanson, Bartol, Maloney, and Greenleaf.  Frank asserts the ALJ would have found Frank to be disabled if the ALJ had properly weighed these opinions when he assessed Frank's RFC and questioned the VE.

When the record contains conflicting medical evidence, the ALJ is responsible for determining credibility and resolving the conflict.  *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id*.  *See also Lester*, 81 F.3d at 830-

32.

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

**A.    Dr. Swanson.**

On March 10, 2003, Dr. Swanson wrote an extensive report based on an examination of Frank and a review of his medical records. Tr. 171-76. Dr. Swanson concluded, *inter alia*, Frank lacked ten degrees of forward flexion. Tr. 176. Dr. Swanson, however, indicated Frank's limited flexion "is not truly a mechanical limitation," described it as a "voluntary" limitation, and did not indicate it limited Frank in any way. Tr. 176. Frank contends the ALJ erred by not including this limitation in his assessment of Frank's RFC. The record, however, does not contain any additional references to Frank's restricted forward

19  -  OPINION AND ORDER

flexion nor any medical opinions that underscore the significance of a ten-degree loss of forward flexion.  Thus, even if the ALJ erred by not including this aspect of Dr. Swanson's assessment, it was harmless error on this record because there is not any evidence that such a limitation is vocationally relevant in this case.

**B.    Dr. Bartol.**

As noted, Dr. Bartol performed an extensive psychological evaluation of Frank in February 2006.  Tr. 358-70.  Based on the tests he performed over two days, Dr. Bartol diagnosed Frank with pain disorder of medical and psychological origin, moderate-to-severe adjustment disorder with depressed mood, chronic pain, and limited mobility.  Tr. 367-68.  Dr. Bartol found Frank has moderate limitations of his ability to perform daily activities; moderate limitations of social functioning; and marked limitations of concentration, persistence, or pace because of his severe pain, the heavy pain medication he takes to treat his pain, and depression.  Tr. 368-69.  Dr. Bartol concluded Frank "would not be able to perform within a competitive job placement until he is able to attain reasonable pain control."  Tr. 366.

The only other psychological assessment in the record was performed by Disability Determination Services (DDS)[4] physician

---

[4] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security

Paul Rethinger, Ph.D., on October 12, 2004.  Tr. 243-54.
Dr. Rethinger diagnosed Frank with myofascial pain syndrome, but
he did not find evidence of psychological impairment.  Tr. 243,
249.  Dr. Rethinger concluded Frank has mild limitations of
concentration, persistence, and pace.  Tr. 253.

Although Dr. Rethinger's psychological assessment of
Frank contradicts Dr. Bartol's assessment, the ALJ concluded
Dr. Rethinger's assessment was inadequate and was "not
sufficiently supported" by the record.  Tr. 22.  The ALJ did not
point to any other medical opinion in the record that
contradicts Dr. Bartol's opinion.  In light of the ALJ's
rejection of Dr. Rethinger's opinion, Dr. Bartol's opinion is
uncontroverted.  The ALJ, therefore, must provide clear and
convincing reasons supported by the record for rejecting Dr.
Bartol's opinion.  *See Lester*, 81 F.3d at 830-32.

The ALJ concluded Frank has only moderate difficulties with
concentration, persistence, and pace despite Dr. Bartol's finding
of marked limitations.  Tr. 22.  The ALJ discredited Dr. Bartol's
opinion on the grounds that Frank had been "able to return to
lighter tasks with his former employer."  Tr. 22.  The ALJ,
however, failed to address Frank's testimony regarding the
accommodations his employer made for his impairments (extra
breaks, assignment to alternate tasks, etc.) that allowed him to

---

Administration pursuant to 42 U.S.C. § 421(a).

perform light-duty work.  The ALJ also discredited Dr. Bartol's
opinion on the ground that Frank "is able to manage daily
activities and social functioning without any reported
difficulties other than those attributed to aches and pains."
Tr. 22.  Dr. Bartol, however, acknowledged in his report that
Frank can perform most of the activities of daily living and is
able to manage simple tasks, but he, nevertheless, concluded
Frank cannot maintain the necessary concentration and pace to
sustain employment.  Tr. 366.  Dr. Bartol noted it is precisely
because of Frank's "aches and pains," which Dr. Bartol termed
"pain interference," that Frank cannot maintain concentration.
Tr. 366.  Moreover, Dr. Bartol's conclusion that Frank's pain
medication also contributes to his inability to maintain
concentration is not contradicted by any evidence in the record.
As noted, contrary to the ALJ's conclusion that Frank did not
have any "reported difficulties" other than aches and pains,
Frank, in fact, attested to his difficulties with concentration
as a result of his heavy pain medication, and the Court already
concluded the ALJ erred when he found Frank's testimony not
credible.  Tr. 411-12.

On this record, the Court concludes the ALJ erred when he
rejected the opinion of Dr. Bartol because he did not provide
clear and convincing reasons for rejecting Dr. Bartol's
assessment of Frank's marked limitations of concentration,

persistence, and pace.

    **C.   Dr. Maloney.**

    On February 1, 2006, Dr. Maloney performed a disability examination of Frank to assess his functional capacity for the State of Oregon.  Tr. 272-74, 356-57.  Based on her examination, Dr. Maloney concluded Frank's functional limitations include, *inter alia*, no climbing, kneeling, crouching, crawling, or reaching in any direction.  Tr. 356-57.  She concluded Frank's impairments are "long-standing" and that his prognosis is poor. Tr. 357.

    The ALJ gave Dr. Maloney's opinion "little weight" on the ground that "she was unaware of other records showing the claimant over-dramatized his right shoulder problem, his positive Waddell tests, the subjective nature of his limitations, and his pain behavior supporting a factor of secondary gain."  Tr. 21. The ALJ cites the opinions of Drs. Greenleaf and Swanson, examining physicians, both of whom made written reports before Dr. Maloney's examination, as support for discrediting Dr. Maloney's opinion.  Tr. 21, 164-76, 238-42.  Thus, because the ALJ asserts Dr. Maloney's opinion is contradicted by other medical opinions in the record, the ALJ must provide specific and legitimate reasons for rejecting her opinion.  *See Thomas*, 278 F.3d at 957.

    Although the ALJ concluded Dr. Maloney "was unaware of other

records showing the claimant over-dramatized" his symptoms, the
ALJ did not identify evidence in the record to support his
conclusion that she did not review those "other records."  In
fact, Dr. Maloney's report makes clear that she reviewed Frank's
MRI results, which creates a strong inference that she reviewed
his other medical records.  Tr. 272.  The fact that Dr. Maloney
was performing a disability assessment for the State of Oregon
also supports an inference that she reviewed Frank's other
records to determine his eligibility for benefits.

        The remaining justifications the ALJ provided for
rejecting Dr. Maloney's opinion are based on the ALJ's conclusion
that Frank exaggerated his symptoms because he was motivated by
secondary gain.  Tr. 21.  As noted, the Court does not find the
ALJ's conclusion that Frank exaggerated his symptoms is supported
by the record.  Both Drs. Swanson and Greenleaf only suggested
the possibility of secondary gain.  Tr. 173, 241.  In fact, even
the ALJ concluded Dr. Swanson's suggestion of secondary gain "was
a bit speculative."  Tr. 22.  Dr. Swanson only "questioned
secondary gain" due to Frank's jumpy reaction to pressure around
his right scapula, but Dr. Swanson, nevertheless, concluded Frank
was not malingering.  Tr. 173.  Dr. Greenleaf diagnosed Frank
with myofascial pain syndrome based on Frank's consistent pain
behavior despite some positive Waddell tests.  Tr. 241.  As the
Court has already pointed out, the record overwhelmingly supports

24  -  OPINION AND ORDER

a conclusion that Frank suffered from myofascial pain with
sensitive trigger points near his right scapula.  Thus, the Court
does not find the ALJ's reasons for rejecting Dr. Maloney's
opinion to be legally sufficient.

When the ALJ does not provide a legally sufficient basis for
rejecting a treating or examining physician's opinion, the Court
may credit that opinion as a matter of law.  *Lester*, 81 F.3d at
834.  Accordingly, the Court credits the opinions of Drs. Bartol
and Maloney.  The record, therefore, reflects Frank has marked
limitations of his ability to maintain concentration, persis-
tence, and pace because of the pain he suffers in his neck and
back and the medication he must take to relieve the pain.
Moreover, Frank cannot climb, kneel, crouch, crawl, or reach in
any direction.

The VE testified at the hearing that a claimant's inability
to reach in all directions (as opposed to the inability to reach
overhead only) would eliminate the jobs she indicated a
hypothetical person with Frank's limitations could otherwise
perform.  Tr. 423.  In response to questions by Frank's attorney,
the VE also testified a hypothetical claimant with marked
limitations of concentration, persistence, and pace "would not be
able to sustain [employment] in a competitive work environment.
Tr. 427.

On this record, the Court finds Frank does not have a

sufficient RFC to sustain work-related activities on a regular and continuing basis as required by SSR 96-8p.  Accordingly, this Court concludes Frank is disabled and, therefore, is entitled to benefits.

The Court need not address the remaining issues raised by Frank because the Court already has found Frank to be disabled.

## REMAND

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court.  *Harman*, 211 F.3d 1178.  The decision generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman*, 211 F.3d at 1178.  The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were

such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the Court finds the record is complete regarding Frank's impairments. The Court credits Frank's testimony as well as the opinions of Drs. Bartol and Maloney as to Frank's physical and mental limitations resulting from his severe impairments. As noted, the VE testified at the hearing before the ALJ that a claimant could not be competitive for jobs in the local and national economy if the claimant could not perform occasional or frequent reaching or if he had marked limitations of concen-tration, persistence, and pace. Accordingly, this Court concludes Frank is disabled and, therefore, is entitled to benefits. Thus, there are no outstanding issues that must be resolved and further proceedings would be futile.

<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

Section 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R.

27  -  OPINION AND ORDER

§ 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant." *Id*. at 795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil Procedure 60(b)(6) governs.  *Massett v. Astrue*, 04-CV-1006 (Brown, J.)(issued June 30, 2008).  *See also McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006).  To ensure that any future application for attorneys' fees under 42 U.S.C. 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court orders as follows:  If Plaintiff intends to submit an application for attorneys' fees under § 406(b), Plaintiff shall submit such application within 60 days from the issuance of the Notice of Award by the Commissioner.

IT IS SO ORDERED.

DATED this 30th day of June, 2008.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge